UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MID-CONTINENT CASUALTY COMPANY,

       Plaintiff,

-vs-                            Case No.    5:08-CV-385-Oc-10GJK

SIENA HOME CORPORATION, a Florida
corporation, et al.,

       Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

       This is an action brought under 28 U.S.C. § 2201 for a declaratory decree.  The Plaintiff, Mid-Continent Casualty Company, seeks a determination that certain policies of insurance it issued to the Defendant, Siena Home Corporation, as the insured, do not cover the damages being sought from Siena in underlying state court litigation being prosecuted there by the other Defendants here, denominated as the Homeowners.

       No issue has been raised concerning either subject matter or in personam jurisdiction, and the parties agree that Florida law supplies the rule of decision.

       Mid-Continent (Doc. 148) and the Homeowners (Doc. 149) have filed cross-motions for summary judgment, and Siena has filed (Doc. 155) an opposition to Mid-Continent's motion asking that its response be treated as a cross motion for summary

judgment.  The issues have been thoroughly briefed by able counsel, and the Court has heard oral argument.[1]

For the reasons explained below, the Court has determined that the motions should be granted in part and denied in part.

## I

Siena was the developer of a residential real estate project in Lake County, Florida, called Spring Valley.  From 2001 to 2006, Siena constructed 447 single family homes in Spring Valley and marketed them as "starter" homes with sales prices beginning below $100,000.00.

On January 4, 2006, the Homeowners filed a class action suit against Siena in state court.[2]  The core claim in that litigation was and is:

> The homes constructed by Siena have defectively constructed exterior wall assemblies which do not create an acceptable barrier to prevent moisture and water from penetrating into the wall systems and interiors.

(Doc. 125-7, ¶ 7, Second Amended Complaint in state court).

The Court was informed at oral argument that the state court litigation is still pending, but is no longer being prosecuted as a class action.  Rather, the claims of

---

[1]     This case, filed in 2008, has been delayed several times at the request of the parties due to ongoing, but largely unsuccessful, efforts to resolve the underlying state court litigation.  (See Docs. 170; 171; 174; 176;178 and 184).

[2]     The Homeowner Plaintiffs in state court, being the Homeowner Defendants in this court, constitute the owners of from 46 to 49 Siena built homes in Spring Valley.  (The record is unclear concerning the precise number).  The Homeowners allege in their state court complaint that they purchased their homes at various times after October 22, 2001.  (See Doc. 125-7, ¶ 2 ).   Mid-Continent states that the certificates of occupancy for the Homeowner's residences ranged from April 12, 2002, through April 28, 2004.  (See Doc. 125, ¶ 58).

the named Homeowners are being tried <u>seriatim</u> in groups consisting of three to five houses at a time.

After the Homeowners began their state court action in early 2006, Mid-Continent Casualty filed this suit on May 2, 2008, seeking a declaratory judgment against Siena and the Homeowners.  Mid-Continent was Siena's commercial general liability insurer under two successive policies covering the period from October 28, 2002 through December 19, 2003, a period of just under fourteen months,[3] and it seeks a determination that the policies it issued to Siena do not cover the Homeowner's claims because:  (1) the damages to the Homeowners' properties did not "manifest" during the coverage period and, therefore, do not constitute covered "occurrences" of "property damage" while the policies were in effect;[4] (2) any damages due to fungus or mold are expressly excluded from coverage; (3) application of a "pollution" exclusion also precludes coverage of the damages being sought; and (4) some of the damages being sought do not meet the definition of "property damage" under the policies.[5]

---

[3]     It appears that Siena was insured by other carriers for time periods before and after the coverage afforded by Mid-Continent, and that the three insurers are participating in the defense of the state court action although Mid-Continent is doing so pursuant to a reservation of rights.

[4]     The form commercial general liability policy used by Mid-Continent (Doc. 1-2) insures against "occurrences" resulting in "property damage."  The term "occurrence" is defined as an "accident" (Doc. 1-2, p. 25, ¶ 13) and the term "property damage" means "physical injury to tangible property."  (Doc. 1-2, p. 26, ¶ 17).

[5]     Count V of Mid-Continent's amended complaint (Doc. 125) also sought a declaration that the homeowner's damages were excluded by an "exterior" exclusion, but that claim has been voluntarily dismissed.  (Docs. 130 and 131).

Siena and the Homeowners unite in opposition to Mid-Continent's motion for summary judgment, and the Homeowners separately seek summary judgment in their own right (Doc. 148), at least with respect to Mid-Continent's duty to defend as distinguished from its duty to indemnify.  Siena's opposition (Doc. 155) asks that its response be treated as a motion for summary judgment.

**II**

The first matter to be dealt with relates to the current status of some of the Homeowner Defendants.

It was represented to the Court without dispute at oral argument that the claims of the Homeowner Defendants Tina Metcalf, Manuel Nieves and Michelle Whitehead, as asserted in the state court action, have been settled and resolved.  It follows that this action, as to those Homeowner Defendants, has become moot; and, pursuant to Rule 21, Federal Rules of Civil Procedure, those three Homeowner Defendants will be dropped as parties.

It has also been represented to the Court in the motion papers (See Doc. 148, pp. 2-3) and at oral argument (Doc. 188, pp. 7-8), that some of the Homeowners, consisting of groups of joint owners of eleven Siena built properties, cannot maintain any claim against Mid-Continent because their homes were not constructed and occupied until various dates in 2004, well after the Mid-Continent coverage period. This point was not disputed by the Homeowners (See Doc. 188, p. 38) and it follows

4

that Mid-Continent is entitled to summary judgment against Siena and those Homeowners with respect to both the duty to defend and the duty to indemnify[6]

## III

The next issue to be dealt with is the question of Mid-Continent's duty to Defendant Siena in the state court action as distinguished from the duty to indemnify Siena against the Homeowner's claims.   Both Siena and the Homeowners seek summary judgment on this issue (Docs. 149 and 152).[7]

Florida law is well established that

[t]he duty to indemnify is determined by the underlying facts of the case, see Hagen v. Aetna Cas. & Sur. Co., 675 So. 2d 963, 965 (5th DCA), review denied, 683 So.2d 483 (Fla. 1996), whereas the duty to defend is controlled by the allegations in the complaint against the insured. See National Union Fire Ins. v. Lenox Liquors, Inc., 358 So. 2d 533, 538 (Fla. 1977); Scheer v. State Farm Fire & Cas. Co., 708 So.2d 312, 313 (Fla. 4th DCA 1998).

State Farm Fire & Cas. Co. v. CTC Development Corp., 720 So.2d 1072, 1077 n.3 (Fla. 1998).[8]   See also Trizec Properties, Inc. v. Biltmore Const. Co., Inc., 767 F.2d

---

[6]     The Homeowners subject to this ruling are: Arturo and Raquel Fernandez; Ada Hernandez; John Lemus; John and Marilee Capello; Wanda and Carlos Andino; Jim and Amanda Smeltzer; Roberto and Rita Aguila; Dhanwuttie and Kamal Ramasar; Indra Besarar; Dalton Reid and Morvet Haye; and Rolf and Eva Schuepp.

[7]     As previously noted (fn. 3, supra) the case in state court is in fact being defended by a coalition of the three insurance carriers with, apparently, a reservation of rights.  Under these circumstances, one might question whether there is a continuing "case or controversy" warranting declaratory relief concerning that aspect of the case.  No party has raised that question, however, and in view of the ongoing proceedings in state court involving a series of separate trials yet to be conducted, the court has determined that declaratory relief (to resolve a live and genuine dispute) is appropriate.

[8]     The quoted passage from State Farm Fire and Casualty Co. v. CTC Development Corp. is dicta in that opinion, but the principle it states is fully supported by the authorities it cites.

810, 811-12 (11th Cir. 1985), and <u>Mid-Continent Cas. Co. v. Frank Casserino Const.,</u> <u>Inc.</u>, 721 F. Supp. 2d 1209, 1214 (M.D. Fla. 2010) (Presnell, J.).

Here, the allegations of the second amended complaint in state court (Doc. 125-7) clearly seek property damages resulting from water intrusion caused by alleged negligence in constructing the exterior walls of the subject homes that were purchased after October 22, 2001.  Mid-Continent tacitly concedes that these allegations, without more, would include property damages incurred by the Homeowners during its coverage period – October 28, 2002 through December 19, 2003 – but asserts that there are circumstances in which the Court may look beyond the pleadings if "objective facts have been disclosed which negate any duty to defend."  (Doc. 154, page 2).  The "objective facts" upon which Mid-Continent relies are the facts and circumstances disclosed during discovery relating to the date of the "manifestation" of the damage to the Homeowner's individual homes; and, as to that matter, which ultimately drives the indemnity determination, there appear to be unresolved issues of fact concerning when such "manifestation" occurred with respect to some if not all of the individual houses involved in the litigation.  In short, the indemnity issue will remain for case-by-case determination as the cases involving individual houses are resolved, but the duty of Mid-Continent to defend those cases is clear.  Summary Judgment will be granted to that effect.

## IV

The next, and perhaps most important issue to be decided, is the question of when does the "occurrence" of property damage insured by Mid-Continent occur?  Or, stated another way, what "triggers" the coverage afforded by Mid-Continent's policies?

In Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co., 227 F.Supp. 2d 1248 (M.D. Fla. 2002) (by Magistrate Judge Jenkins, adopted by Judge Merryday) the opinion observed that there are four trigger-of-coverage rules variously applied by the courts in determining whether coverage exists under a commercial general liability (CGL) policy of the kind involved in this case:  (1) exposure; (2) manifestation; (3) continuous trigger; and (4) injury in fact.  The court went on to hold that the Florida courts apply the "manifestation" rule, citing Travelers Ins. Co. v. C. J. Gayfer's & Co., Inc., 366 So.2d 1199 (Fla. 1st DCA 1979).  See also Prieto v. Reserve Ins. Co., 340 So.2d 1282 (Fla. 3rd DCA 1977).[9]  This exposition of Florida law has since been uniformly followed. See, e.g., Mid-Continent Casualty Co. v. Frank Casserino Const., supra; Essex Builder's Group, Inc. v. Amerisure Ins. Co., 485 F. Supp 2d 1302 (M.D. Fla. 2006) (Conway, J.); United National Ins. Co. v. Best Truss Co., No. 09-22897-CIV, 2010 WL 5014012 (S.D. Fla. 2010) (Altonaga, J.).

Thus, in Florida, the "occurrence" and resulting coverage of "property damage" under a Commercial General Liability ("CGL") insurance policy is the "manifestation"

---

[9]      There is language to the contrary in the earlier decision in Trizec Properties, 767 F.2d 810, but the relevant passage is dicta because the court was deciding the issue of the carrier's duty to defend, not the duty to indemnify.  This was noted by Judge Presnell in Frank Casserino Const., Inc., supra, 721 F. Supp 2d at 1216.

of the damage, not when the alleged negligence occurred or the moment that the resulting injury or damage itself first occurred.

That leaves, then, the issue of what "manifestation" means - - a subject of disagreement and debate in this case.  Does it mean the date or moment in time that the property damage was discovered, or the date that it became discoverable?  The answer to that question has been supplied by Judge Presnell in <u>Frank Casserino Const.</u>, <u>supra</u>, a case presenting remarkably similar facts:

> That no one saw or "discovered" damage caused by water intrusion during the policy period is of no moment.  Under Florida's applicable 'trigger' theory and the unambiguous language of the CGL policies at issue here, the only relevant question is whether physical injury to the buildings manifested itself during the period of coverage.

771 F. Supp. 2d at 1217.

Judge Altonaga followed <u>Frank Casserino Const., Inc.</u> and reached the same conclusion in <u>United National Ins. Co.</u>, <u>supra</u>, adding that manifestation exists whenever the property damage would have been visible "upon a prudent engineering investigation," 2010 WL 5014012 at *5 (citing <u>Casserino</u>), even if removal of building components would be necessary to gain access to the damaged area.[10]

The Court concludes that the "manifestation" of the "occurrence" of property damage, for purposes of determining coverage of the Mid-Continent policies in this

---

[10]     At oral argument, counsel for the Homeowners postulated a hypothetical case like this:  Suppose a family leaves their home for an extended vacation.  While they are away, a storm occurs and their roof fails.  The date of the storm is known, but the homeowners do not discover the damage until they return some time later.  Did the damage "manifest" itself when it became discoverable at the time of the storm, or did it become "manifest" only when it was later discovered by the absent owners?  The fortuitous nature of the latter resolution destroys any logical basis for its selection.

case, is the time that such damage was discernable and reasonably discoverable either because it was open and obvious or upon a prudent engineering investigation, and not the time of actual discovery where the two circumstances come about in sequence at different times.   The Court will grant partial summary judgment establishing that principle as the law of the case.  Summary judgment will be denied, however, with respect to the application of that principle to the Homeowners' individual houses and their individual claims because of issues of fact as to when their respective damages were first discoverable.

## V

Finally, Mid-Continent seeks summary judgment to the effect that recovery of damages for mold remediation is excluded by an express mold exclusion in the second of its two policies (covering the limited period of October 28, 2003 to December 19, 2003), and by a pollution exclusion in both policies.  It also claims that damages due merely to the cost of repairing or removing defective work is not covered "property damage" and must be distinguished from a claim for the costs of repairing damage to the structure caused by defective work which is a claim for "property damage."  See U. S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 889-890 (Fla. 2007), and Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241, 1248-49 (Fla. 2008).[11]

---

[11]   This esoteric distinction is better understood by applying it to the facts of the Pozzi Window decision involving the installation of windows.  The court held that a contractor's defective work in installing the windows, remediable by repair or replacement of the windows themselves, would not be "property damage."  On the other hand, if the defective work resulted in other structured or collateral injury to the property, that would constitute "property damage."

Each of these contentions would involve a fact intensive determination of the nature of the damages being awarded with respect to each of the Homeowners' separate properties.  Summary judgment is therefore inappropriate for two reasons. First, there are issues of fact to be resolved; and, second, determining Mid-Continent's liability to indemnify – or not to indemnify – the Homeowners' claims cannot be accomplished until those fact issues have been resolved in the state court litigation and judgment has been entered there.  See Frank Casserino Const., Inc., supra.

In order to avoid the distinct possibility of multiple trials with respect to individual properties, first in the state court and then in this Court, the parties are encouraged to consider the future management of their state court litigation in a manner – subject always, of course, to the approval of the presiding Circuit Judge – that will secure specific factual findings by the jury (or the judge in a bench trial) necessary to a determination of the underlying coverage issues that may exist in the particular cases. Specifically, this might be achieved by a special interrogatory verdict form concerning the date the damages became discoverable or "manifest" and/or itemizing and quantifying the elements of damages.

## Conclusion

1.     The Homeowner Defendants Tina Metcalf, Manuel Nieves and Michelle Whitehead are hereby Dropped as parties in this action.

2.     The motion for summary judgment filed by the Plaintiff, Mid-Continent Casualty Company (Doc. 148) is Granted with respect to the Homeowner Defendants Arturo and Raquel Fernandez; Ada Hernandez; John Lemus; John and Marilee

Capello; Wanda and Carlos Andino; Jim and Amanda Smeltzer; Roberto and Rita Aguila; Dhanwuttie and Kamal Ramasar; Indra Besarer; Dalton Reid and Morvet Haye; and Rolf and Eva Schuepp.  The Court Declares and Decrees that Mid-Continent Casualty Company has no duty to defend or to indemnify its insured Siena Home Corporation with respect to the claims of those Homeowners presently pending against Siena in state court.

3.     The motions for summary judgment filed by the Homeowners (Doc. 149) and by Siena Home Corporation (Doc. 155) are Granted to the extent that the Court Declares and Decrees that the Plaintiff Mid-Continent Casualty Company has a duty to defend its insured, Siena Home Corporation in the action brought by the Homeowners against Siena in state court.

4.     The motion for summary judgment filed by the Plaintiff, Mid-Continent Casualty Company (Doc. 148), is Granted to the extent that the court Declares and Decrees as the law of the case that the "manifestation" of the "occurrence" of covered "property damage" for the purpose of determining the triggering of the insurance coverage afforded by the policies issued to Siena Home Corporation by Mid-Continent Casualty Company is the time that such "property damage" became discernable and reasonably discoverable either because it was open or obvious or upon a prudent engineering investigation, and not the time of actual discovery where the two circumstances come about in sequence at different times.

5.      Pursuant to Rule 54(b) and Rule 58, Federal Rules of Civil Procedure, there being no reason for delay, the Clerk is Directed to enter Judgment in accordance with Paragraphs 2, 3 and 4 above.

6.      Except to the extent that the pending motions for summary judgment (Docs. 148, 149 and 155) have been Granted in Paragraphs 2, 3 and 4 above, such motions are otherwise Denied in all respects.  The case will remain pending, and the Court reserves jurisdiction, to decide and adjudicate all issues not resolved in this Order.

7.      Because it appears that this action will now be dormant awaiting disposition of the underlying action in state court, the Clerk is directed to administratively close the file subject to the right of any party to move to reopen the case at any future time upon disposition of the state court action in whole or in part, or for other good cause show.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 8th day of July, 2011.

_____

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy